IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Alexis Wilson, | C/A No. 0:11-2108-CMC-PJG |
| Plaintiff, | |
| vs. | |
| Mailroom Supervisor Mrs. Freeman; Associate Warden Jordan, in their individual capacities, | **REPORT AND RECOMMENDATION** |
| Defendants. | |

The plaintiff, Alexis Wilson ("Wilson"), a self-represented litigant, filed this civil rights action against the named defendants.[1] This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendants' motion for summary judgment. (ECF No. 24.) By order of this court filed pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the dismissal and summary judgment procedures and the possible consequences if he failed to respond adequately. (ECF No. 25.) Wilson filed a response in opposition to the defendants' motion. (ECF No. 34.) Having carefully considered the parties' submissions and the applicable law, the court finds that the defendants are entitled to summary judgment.

## BACKGROUND

The events at issue in Wilson's Complaint occurred while Wilson was housed at Allendale Correctional Institution, a facility of the South Carolina Department of Corrections ("SCDC"). Liberally construed, Wilson's Complaint alleges that in May 2011, during the pendency of a previous

---

[1] The defendants assert in their motion for summary judgment that they are correctly identified as follows: Helen P. Freeman and Associate Warden Arthur Jordan, Jr..



federal civil action,[2] Defendant Freeman denied him postage in violation of an SCDC policy regarding legal mail for indigent litigants. Wilson asserts that Freeman read his legal mail and determined that she would not provide the requested postage to him on the grounds that his lawsuit was not against SCDC officials. Freeman's actions, Wilson alleges, resulted in Wilson's asking the court to dismiss his case because he could not afford the postage to mail a response.[3] Wilson alleges that Defendant Freeman violated his constitutional rights by denying him access to the courts and that Associate Warden Jordan, by upholding Freeman's decision, also violated Wilson's constitutional rights. Additionally, Wilson alleges that the defendants violated his constitutional rights by charging Wilson for indigent postage and legal supplies in violation of SCDC policy. Wilson seeks monetary damages, damages for emotional distress, and injunctive relief. (See generally Compl, ECF No. 1.)

**DISCUSSION**

**A.    Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing

---

[2] Wilson identifies this civil action in his response in opposition to the defendants' motion as C/A No. 0:11-199-CMC.

[3] The court observes in Civil Action No. 0:11-199-CMC that by Opinion and Order dated May 12, 2011, the Honorable Cameron McGowan Currie, United States District Judge, extended Wilson's deadline to object to the Report and Recommendation until June 3, 2011. (C/A No. 0:11-199-CMC, ECF No. 30.) On June 1, 2011, Wilson filed a motion by mail in which he requested that his case be dismissed without prejudice "until such time as Plaintiff can explore his other o[p]tions." (Id., ECF No. 35 at 1.) Judge Currie granted Wilson's motion to dismiss on June 6, 2011. (Id., ECF No. 36.)

PJG

to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

PJG

B.  **Wilson's Claims**

It is well established that prisoners have a constitutional right of access to the courts. Bounds v. Smith, 430 U.S. 817 (1977). In Bounds, the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Id. at 828. To state a cognizable claim for denial of meaningful access to the courts a prisoner must allege a specific, actual injury resulting from the alleged denial. Lewis v. Casey, 518 U.S. 343, 351-52 (1996); Cochran v. Morris, 73 F.3d 1310 (4th Cir. 1996). The Lewis Court further explained that

> the injury requirement is not satisfied by just any type of frustrated legal claim. Nearly all of the access-to-courts cases in the Bounds line involved attempts by inmates to pursue direct appeals from the convictions for which they were incarcerated, or habeas petitions. In Wolff v. McDonnell, 418 U.S. 539 (1974), we extended this universe of relevant claims only slightly, to "civil rights actions"—*i.e.*, actions under 42 U.S.C. § 1983 to vindicate "basic constitutional rights."

Lewis, 518 U.S. at 354 (internal citations omitted); see also Christopher v. Harbury, 536 U.S. 403, 414-15 (2002) (stating that "the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong").

Specificity is required in pleading a denial of access to the courts claim. Cochran, 73 F.3d at 1317. Moreover,

> the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation. It follows, too, that when the access claim (like this one) looks backward, the complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought. There is, after all, no point in spending time and money to establish the facts constituting

> denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element.

Christopher, 536 U.S. at 415.

In this case, Defendant Freeman acknowledges an occasion on which she did not process Wilson's legal mail as indigent legal mail based upon her belief that inmates were not allowed to use indigent mail and postage to file lawsuits against non-SCDC employees, and that Associate Warden Jordan agreed with her interpretation. (Freeman Aff. ¶¶ 7-10, ECF No. 24-3 at 2.) She also acknowledges that Wilson filed a Step 1 Grievance regarding this interpretation of SCDC policy, and that the Warden upheld Wilson's grievance and determined that Wilson was permitted to use indigent legal mail to challenge the conditions of his confinement at the detention center. (Freeman Aff. ¶¶ 11-14, ECF No. 24-3 at 2; see also Step 1 Grievance, ECF No. 24-5 at 2-3.)

However, even assuming Wilson's allegations with regard to this claim to be true, Wilson has not demonstrated any actual injury as required to state a claim for denial of access to the courts. See Lewis, 518 U.S. at 351 (stating that an inmate must demonstrate that the deficiencies in the prison's library or legal assistance program "hindered his efforts to pursue a legal claim"); Cochran, 73 F.3d at 1317 (holding that the district court properly dismissed a claim for denial of access to the courts where the plaintiff failed to identify any actual injury resulting from official conduct); Strickler v. Waters, 989 F.2d 1375, 1384 (4th Cir. 1993) (observing that a prisoner had a "basic requirement that he show specific harm or prejudice from the allegedly denied access"). Although Wilson asserts that he was "forced" to ask the court to dismiss his previous federal case in order to attempt to "preserve[] an avenue to continue his case" which he alleges caused "severe harm," (Pl.'s Resp. Opp'n Mot. Summ J., ECF No. 34 at 3), the court observes, as noted above, that Wilson

PJG

moved to voluntarily dismiss his case.[4] Moreover, Wilson's case was dismissed without prejudice, thereby affording him the option of refiling his lawsuit within the applicable limitations period if he so desired. Wilson cannot demonstrate an actual injury and, therefore, summary judgment is appropriate as to this claim.

Wilson also appears to allege that Defendant Freeman violated his constitutional rights by opening and reading his legal mail. Inmates retain their First Amendment rights in prison. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). However, in Turner v. Safley, 482 U.S. 78, 89 (1987), the United States Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." To meet this standard, the Turner Court identified four factors to consider: (1) whether the regulation is rationally related to a legitimate and neutral governmental objective; (2) whether there are alternative avenues that remain open to the inmates to exercise the right; (3) the impact that accommodating the asserted right will have on other guards and prisoners and on the allocation of prison resources; and (4) whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials. Id. at 89-90. The Court also recognized that deference should be given to the decisions of prison administrators, especially when those decisions deal with issues of prison safety and security. Id. at 89; see also In re Long Term Admin. Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 469 (4th Cir. 1999) ("Prison officials should be accorded wide-ranging deference in the adoption and execution

---

[4] The court further observes that Wilson appears to acknowledge that summary dismissal of C/A No. 0:11-199-CMC was appropriate at that time. (See ECF No. 35 at 2) (stating that "I read the report and do agree as to its finding and shall wait until a later date to p[ur]sue it").

of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.").

The United States Court of Appeals for the Fourth Circuit has held that "[w]ithout question, the opening and inspecting of an inmate's outgoing mail is reasonably related to legitimate penological interests, and, therefore, constitutional . . . ." Altizer v. Deeds, 191 F.3d 540, 547-48 (4th Cir. 1999). Legal mail may not be opened outside of the presence of the prisoner or addressee. See Wolff v. McDonnell, 418 U.S. 539, 575 (1974). To the extent Wilson complains that the policy constitutes "censorship" such a claim plainly fails under controlling precedent.

**C.      Violation of SCDC Policy**

Additionally, Wilson alleges that the defendants violated his constitutional rights by charging Wilson for indigent postage and legal supplies. He appears to argue in his response to the defendants' motion for summary judgment that his inmate trust account is being debited for legal supplies in violation of SCDC Policy PS-10.08, 4.2.1, which details the supplies that indigent inmates receive on a monthly basis. (See PS-10.08, ECF No. 24-2 at 3.) However, violations of prison policies alone do not rise to the level of a constitutional deprivation. See Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992) (stating that violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983). Moreover, to the extent that he contends it violates his rights under the First Amendment, the requirement discussed in Bounds that "indigent inmates must be provided at state expense with paper and pen to draft legal documents with notarial services to authenticate them, and with stamps to mail them," 430 U.S. at 824-25, does not preclude a prison from recouping such expenses from funds deposited in an inmate trust account. See Mayfield v. Wilkinson, 117 Fed. App'x 939, 939 (5th Cir. Dec. 9, 2004); Royse v. Riveland, 940

F.2d 1535 (9th Cir. Aug. 5, 1991) (Table). Further, Wilson cannot show the defendants' alleged actions denied him access to the courts, as Wilson has not alleged that he was ever improperly denied an indigent packet. See Royse, 940 F.2d 1535.

**RECOMMENDATION**

For all of the foregoing reasons, the court recommends that the defendants' motion (ECF No. 24) be granted to the extent that they seek summary judgment on Wilson's claims.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

June 14, 2012
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).